**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry Crabb and Matthew McBride, individually and as class representatives on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>GoDaddy.com, Inc., and The Go Daddy Group, Inc.,<br><br>Defendants. | No. CV10-00940-PHX-NVW<br><br>**ORDER** |

Before the Court are "Plaintiffs' Motion for Partial Summary Judgment on Go Daddy's Lack of Contractual Authority" (Doc. 163) and Defendants' "Cross-Motion for Partial Summary Judgment" (Doc. 167).

**I.     LEGAL STANDARD**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(c). The nonmoving party's properly presented evidence is presumed to be true

and all inferences from the evidence are drawn in the light most favorable to that party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II. BACKGROUND[1]

From 2004 through 2007, Plaintiffs used godaddy.com, a website owned and controlled by Defendants (collectively, "Go Daddy"), to register five domain names, one of which was renewed twice. Plaintiffs paid approximately $10 per registration or renewal. Neither requested any services beyond simple registration of their domain names. Plaintiffs never built websites to go with their domain names or requested that their domain names be linked to specific Internet Protocol addresses.

For as long as Plaintiffs' domain names remained registered, Go Daddy "parked" them on Go Daddy-created pages full of advertising. Go Daddy received advertising revenue from the ads, which Go Daddy claims was less than a dollar. Plaintiffs have now sued Go Daddy, alleging unjust enrichment, trespass, and breach of good faith and fair dealing and hope to certify this case as a class action.

Go Daddy contends that it had contractual permission from Plaintiffs to use Plaintiffs' domain names as advertising space by "parking" them on Go Daddy-created pages of advertising. Plaintiffs assented to two agreements: (1) the Domain Name Registration Agreement, which neither authorized Go Daddy to park domain names nor prohibited it, and (2) the Universal Terms of Service, which did not authorize Go Daddy to park domain names unless it incorporated by reference a Parked Page Service Agreement.

Although the Universal Terms of Service was revised several times during the relevant period, each version included the following language:

---

[1] The following facts are undisputed unless attributed to one party or the other.

- 2 -

| | |
|---|---|
| 1 | All Go Daddy policies and agreements specific to particular Software and Service are incorporated herein and made part of this Agreement by reference . . . . By purchasing Go Daddy's Software or Services, You acknowledge that You have read, understood, and agree to be bound by all terms and conditions of this Agreement and any other policies or agreements made part of this Agreement by reference . . . . |

All Go Daddy policies and agreements specific to particular Software and Service are incorporated herein and made part of this Agreement by reference . . . . By purchasing Go Daddy's Software or Services, You acknowledge that You have read, understood, and agree to be bound by all terms and conditions of this Agreement and any other policies or agreements made part of this Agreement by reference . . . .

\* \* \*

**The General Terms in Section A apply to all customers of Go Daddy. The Software and Services Specific Agreements incorporated in Section B apply only to customers who have purchased those referenced Services.**

\* \* \*

**B.  SOFTWARE AND SERVICES SPECIFIC AGREEMENTS**

If You purchase Services from Go Daddy, the following Software and Services specific agreements shall apply and are incorporated within this Agreement . . . . :

**Domain Names**

Back Ordering and Monitoring Agreement

Change of Registrant Agreement

ConsoliDate

Domain Name AfterMarket Member Agreement

Domain Name Proxy Agreement

Domain Registration Agreement

Parked Page Service Agreement

Transfer Agreement

**E-mail**

Email Services User Agreement

WebMail End User License Agreement

**Web Site Hosting**

Dedicated Hosting Agreement

Hosting and Virtual Service Agreement

1  (Docs. 79-2 at 22, 34-35, 38, 50-51; 79-3 at 2, 14-15; 43-1 at 2, 13-14 (boldface and underlining in original; underlining represents hyperlinks).) This portion of the Universal Terms of Service continued with more hyperlinked subject-specific agreements under three more bolded headings ("Web Site Creation," "Other Software and Services," and "Policies"). In all, Section B of the Universal Terms of Service contained more than thirty subject-specific agreements alphabetized within groups under six subheadings (also organized in alphabetical order).

Under the "Domain Names" subheading, "Domain Registration Agreement" was listed as the sixth of eight agreements and "Parked Page Service Agreement" as the seventh. According to the Parked Page Service Agreement:

> If You are using any of Go Daddy's Parked Page services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates['] webpages, and that they may place advertising on your webpage and that Go Daddy specifically reserves this right.

(Doc. 79-6 at 13.)

### III. ANALYSIS OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

As one of its defenses in this action, Go Daddy contends that at the time Plaintiffs registered their domain names the Universal Terms of Service incorporated the Parked Page Service Agreement, which granted Go Daddy contractual permission to use Plaintiffs' domain names as advertising space. Plaintiffs have moved for summary judgment only on this defense.

The alleged effect of the Parked Page Service Agreement — *i.e.*, that it gives Go Daddy power to use others' domain names as advertising space — is not a stipulated or undisputed fact in this summary judgment posture. However, Plaintiffs' sole argument here is that Go Daddy lacked contractual authority to place advertising on Plaintiffs' websites, and Go Daddy's sole counterargument is that the Universal Terms of Service (to which Plaintiffs agreed) incorporated the Parked Page Service Agreement by reference, and therefore Plaintiffs agreed to the Parked Page Service Agreement. For purposes of this motion, then, it is undisputed that the Parked Page Service Agreement, if

1  it applied, contained language sufficient to give Go Daddy the authority to do what it did
2  with Plaintiffs' domain names.

### A. Legal Standard

Three legal principles guide determination of whether the Universal Terms of Service incorporated the Parked Page Service Agreement. First, "[t]he interpretation of a contract is a matter of law and not a question of fact." *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 328, 909 P.2d 393, 395 (Ct. App. 1995). Second, "[i]t is a basic rule of contract construction" that incorporating agreements by reference requires a "'*clear and unequivocal*'" reference. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 268, 681 P.2d 390, 420 (Ct. App. 1983) (quoting 17A C.J.S. Contracts § 299 at 136 (1963) (emphasis in original)). Finally, Arizona follows the Restatement (Second) of Contracts § 206 in "constru[ing] ambiguities against the drafter." *Abrams v. Horizon Corp.*, 137 Ariz. 73, 79, 669 P.2d 51, 57 (1983); *see also Bjornstad v. Senior Am. Life Ins. Co.*, 599 F. Supp. 2d 1165, 1172 (D. Ariz. 2009) (applying *contra preferentem* canon).

### B. When Plaintiffs Registered a Domain Name Through Go Daddy, the Universal Terms of Service Did Not Incorporate the Parked Page Service Agreement by Reference.

Section A of the Universal Terms of Service stated: "All Go Daddy policies and agreements specific to particular Software and Service are incorporated herein and made part of this Agreement by reference," and "[t]he Software and Services Specific Agreements incorporated in Section B apply only to customers who have purchased those referenced Services." Section B states: "If You purchase Services from Go Daddy, the following Software and Services specific agreements shall apply and are incorporated within this Agreement." Thus, for the Universal Terms of Service to have incorporated by reference the Parked Page Service Agreement, the Universal Terms of Service must have clearly and unequivocally communicated that registering a domain name included purchasing the Parked Page Service, with or without an additional charge.

In briefing, Go Daddy stated that "the registration of a domain name binds a customer (via incorporation) to the eight other agreements listed under the subheading "Domain Names" in Section B of the [Universal Terms of Service]." (Doc. 177 at 3.) That is, if a customer registered a domain name through Go Daddy, the Universal Terms of Service incorporated all eight agreements listed under the subheading "Domain Names": the Back Ordering and Monitoring Agreement, Change of Registrant Agreement, ConsoliDate, Domain Name After Market Member Agreement, Domain Name Proxy Agreement, Domain Registration Agreement, Parked Page Service Agreement, and Transfer Agreement.

But at oral argument, Go Daddy's counsel stated that three of the agreements listed under the subheading "Domain Names" would not apply to a customer registering a domain name unless the customer additionally purchased services for Back Ordering, Domain Name After Market Membership, and/or Domain Name Proxy. (Doc. 181 at 22.) Counsel explained that ConsoliDate could be free or paid, depending on circumstances, but Change of Registrant, Transfer, and Parked Page Service were bundled with domain name registration for no additional charge, and therefore the agreements specific to those services would apply to any domain name registration along with the Domain Registration Agreement. However, neither the listing of specific agreements alphabetized under various subheadings nor any other provision in the Universal Terms of Service identified which services were bundled and which agreements applied to specific bundles of services.

Further, the Universal Terms of Service said the "Software and Services Specific Agreements incorporated in Section B apply only to customers who have purchased those referenced Services," and it is unlikely that, without further explanation, a customer would think he had "purchased" for no additional charge a "Service" that would provide him no benefit. Moreover, the Universal Terms of Service did not indicate whether "Domain Names" identified a Service or was a subheading for a category of subject-specific agreements, which could apply if the specifically related Service were purchased.

Finally, even if a prospective customer had considered purchasing the Parked Page Service and read the Parked Page Service Agreement, the agreement revealed nothing that necessarily linked it to domain name registration services. And the portion of the Parked Page Service Agreement to which Go Daddy looks for authority is unhelpful because it is circular with respect to the question at hand: "If You are using any of Go Daddy's Parked Page services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates['] webpages . . . ." (Doc. 79-6 at 13.) But how does a customer know if he is "using any of Go Daddy's Parked Page services"? And does a customer actually *use* the Parked Page Service, or does Go Daddy?

A careful customer reading the Universal Terms of Service would have no reason to suspect that the Domain Registration Agreement and the Parked Page Service Agreement always go together. The Universal Terms of Service informed customers that specific agreements would apply when specific services were purchased. It did not clearly and unequivocally inform customers which agreements applied to which services. It did not notify customers that certain unrequested "services" would be bundled with requested services. In particular, it did not communicate that the Parked Page Service Agreement applies to anyone registering a domain name.

As a matter of law, the Terms of Service did not clearly and unequivocally inform Plaintiffs that the Parked Page Service Agreement was among those agreements incorporated by reference when Plaintiffs purchased domain name registration from Go Daddy. *See United Cal. Bank*, 140 Ariz. at 268, 681 P.2d at 420. Plaintiffs' summary judgment motion will therefore be granted.

**IV. ANALYSIS OF GO DADDY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

It was expected that the parties would file cross-motions for summary judgment on Go Daddy's defense that it had contractual permission to park Plaintiffs' domain names. (See Doc. 162 at 29.) Go Daddy has instead interpreted a phrase in the scheduling order

— "[t]he preliminary summary judgment motions will be limited to contract-related issues" (Doc. 160 at 1) — as permission to file a cross-motion on anything related to the contract. Go Daddy seeks summary judgment on Plaintiffs' cause of action for breach of the duty of good faith and fair dealing (*see* Doc. 53 at 16), arguing that the essence of a good faith/fair dealing claim is being deprived of the full benefit of the bargain, and that Plaintiffs here received the full benefit of their bargain with Go Daddy, *i.e.*, domain name registration. Therefore, says Go Daddy, summary judgment can be granted on the good faith/fair dealing claim regardless of what happens to the contractual authority question.

Go Daddy's cross-motion is not within the scope of the permission granted to file early cross-motions for summary judgment on a narrow issue of law. Summary judgment is not otherwise appropriate because the record has not been properly developed on the good faith/fair dealing issue. Accordingly, Go Daddy's cross-motion will be denied, and Plaintiffs' request, in the alternative, to defer briefing under Fed. R. Civ. P. 56(f) is moot.

IT IS THEREFORE ORDERED that "Plaintiffs' Motion for Partial Summary Judgment on GoDaddy's Lack of Contractual Authority" (Doc. 163) is granted.

IT IS FURTHER ORDERED that Go Daddy's "Cross-Motion for Partial Summary Judgment" (Doc. 167) is denied.

Dated this 27th day of September, 2011.

Neil V. Wake
United States District Judge